IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TODD HERSHEY,** | : | Civil No. 1:21-cv-0506 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **THE PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, et al.,** | : | |
| | : | |
| **Defendants.** | : | Judge Sylvia H. Rambo |

# M E M O R A N D U M

Plaintiff Todd Hershey ("Hershey"), a former employee of the Commonwealth of Pennsylvania Department of Transportation ("PennDot") alleges that his supervisors retaliated against him in violation of the Family Medical Leave Act ("FMLA") by terminating his employment the day he returned from medical leave and without adequate due process. Before the court is Defendants' motion to dismiss the amended complaint. For the reasons set forth below, the motion will be granted in part and denied in part.

## I.    BACKGROUND[1]

Hershey was employed as a diesel mechanic by PennDot for over eighteen years (Doc. 46, ¶¶ 15-16.) As a PennDOT mechanic, Hershey's employment was governed by a Collective Bargaining Agreement ("CBA") between the

---

[1] The following facts are drawn from the complaint and are accepted as true for purposes of resolving the motion to dismiss.

Commonwealth and Council 13, American Federation of State, County and Municipal Employees, AFL-CIO, July 1, 2019 – June 30, 2023. (*See* Doc. 51-1.)[2]

In January 2020, Hershey informed his supervisor, Defendant Jeffrey Parks ("Defendant Parks"), that he may need to take FMLA leave at some point to care for his son who is frequently hospitalized for liver disease. (*Id.* ¶¶ 17, 19.) After this discussion, Hershey began to experience "harassment and disparate treatment" at work. (*Id.* ¶ 20.) For instance, on one occasion, his coworkers placed a pacifier in his toolbox to insinuate that he was a "baby" for considering FMLA leave. (*Id.* ¶ 21.) On another occasion, he was formally reprimanded by Acting Supervisor and Union President Scott Saylor ("Saylor") for adjusting the office thermostat in violation of a temperature policy that had never been enforced against anyone else. (*Id.* ¶¶ 22-24.) Shortly thereafter, in March 2020, several of Hershey's coworkers informed him that their equipment manager, Defendant Todd Strait ("Defendant Strait"), intended to get Hershey fired by falsely alleging sexual harassment against him. (*Id.* ¶¶ 7, 25.) He was also told that Defendant Strait encouraged Saylor to file his own sexual harassment complaint against Hershey, and that Defendant Strait

---

[2] This agreement is a matter of public record, available online at https://www.hrm.oa.pa.gov/employee-relations/cba-md/documents/cba-afscme-2019-2023.pdf. It is also an undisputedly authentic document, which is foundational to Hershey's claims. (*See* Doc. 46, ¶¶ 108, 114, 116-19.) Exhibits attached to the complaint, matters of public record, and undisputedly authentic documents upon which claims are based may all be considered by the court at the motion to dismiss stage. *Cf. Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

and Saylor hoped that Hershey would be fired before the end of the summer. (*Id.* ¶¶ 26-27.) Another co-worker advised Hershey to "keep his head down and [ ] mouth shut." (*Id.* ¶ 28.)

Also in March 2020,[3] Defendant Michael Rishel, the District 9 Labor Relations Coordinator for PennDot, reprimanded Hershey for a meme that was posted on his Facebook page, and demanded he sign a "last chance" agreement or face termination. (*Id.* ¶¶ 39, 41-42.) Under that agreement, Hershey was afforded "a Final Warning for violation of the Commonwealth and Department Workplace Violence Policies and inappropriate behavior," on the explicit condition that "should [he] commit any similar infractions . . . the Department of Transportation shall have the exclusive authority" to discipline him for such violation.[4] (Doc. 51-2 at 3, ¶¶ 1-2.)

In late May, Hershey reported "the harassment and [ ] Saylor's behavior" to Defendant Parks, and as he made his report, other employees yelled out "rat." (*Id.* ¶ 29.) Mr. Parks took no action to address the report or the name-calling, in contravention to PennDot policies and procedures. (*Id.* ¶¶ 29-31.) Hershey also reported Saylor's and Defendant Strait's harassment to Human Resource Officer

---

[3] Although the Second Amended Complaint provides a date of "March 16, 202<u>2</u>," the court presumes that the referenced date is a clerical error. (*See* Doc. 46, ¶ 42.)

[4] The "last chance" agreement is foundational to Plaintiff's claims (*see id.* at ¶¶ 39, 41, 102, 103, 108, 114, 116-19), and therefore the court may consider it without converting the motion to dismiss into one for summary judgment. *In re Burlington*, 114 F.3d at 1426.

Melissa Matchock ("Defendant Matchock"), who also failed to investigate in accordance with PennDot's policies and procedures. (*Id.* ¶¶ 32-34.)

In early June 2020, Hershey became sick but was nonetheless given "excessive job duties, well outside his normal position," and a "routine sheet of tasks to complete and sign off on to keep track of [his] work performance." (*Id.* ¶¶ 35-36.) On June 8, 2020, Saylor and Defendant Parks, at the direction of Defendant Strait, filed a false sexual harassment report against him. (*Id.* ¶ 38.) That same day, Hershey took FMLA leave due to his illness, and was thereafter hospitalized for several days. (*Id.* ¶ 35.)

On July 30, 2020, Hershey received a call from a human resources assistant who informed him that they had received a fax from his physician clearing him for "full work duties," and therefore he would be required to use vacation time for work he had missed since being cleared. (*Id.* ¶¶ 44-45.) However, prior to receiving the call, Hershey was unaware that his physician had medically approved his return to work. (*Id.*)

When Hershey returned to work the following day, Defendant Parks immediately directed him to a meeting. (*Id.* ¶ 48.) At the meeting, Defendant Rishel advised him that Saylor had filed sexual harassment allegations against him

4

and that they were going to conduct a disciplinary hearing.[5] (*Id.* ¶ 48.) Hershey was provided only two minutes to discuss the allegations with his union representative before the hearing began. Upon its conclusion, Hershey was immediately suspended and thereafter terminated. (*Id.* ¶¶ 46, 55, 69.) At the time of his termination, Hershey had accrued more than 1,400 hours of paid time off, sick time, and/or vacation time, and he was denied compensation for this accumulated leave. (*Id.* at ¶ 62.)

On March 22, 2021, Hershey initiated this action by filing a complaint, which he subsequently amended on March 7, 2022. (Docs. 1, 23.) On September 7, 2022, with leave of court, Hershey filed a second amended complaint ("complaint"), the operative pleading in this action. (Doc. 46.) Count 1 of the complaint asserts a claim of FMLA retaliation; Count 2 asserts a claim for FMLA interference; Count 3 asserts a violation of Pennsylvania's Wage Payment and Collection Law; Count 4 asserts a violation of the Fourteenth Amendment Due Process Clause and 42 U.S.C. § 1983; and Count 5, plead in the alternative, asserts a claim for breach of contract. (Doc. 46.) Defendants have moved to dismiss the complaint under Federal Rule of Procedure 12(b)(1) and (6). The motion has been fully briefed and is ripe for review.

---

[5] Hershey was not informed that this meeting was a "Loudermill hearing" or that he was entitled to certain rights in conjunction with the hearing, including adequate notice and proper representation. (Doc. 46 ¶¶ 50-51.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter or if the plaintiff lacks standing to bring his claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the court must accept all factual allegations in the complaint as true, and the court may only consider the complaint and documents referenced in or attached to the complaint. *See Gould Electronics, Inc. v. U. S.*, 220 F.3d 169, 176 (3d Cir. 2000).

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. *Odd v. Malone*, 538 F.3d 202, 205 (3d Cir. 2008). The court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. *See Cal. Pub. Employees' Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004), *citing Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather,

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under *Twombly*, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### III.   DISCUSSION

In support of the motion to dismiss, Defendants argue that Hershey (1) failed to plausibly allege any claim under the FMLA; (2) cannot maintain a Wage Payment and Collection Law claim against PennDot as a public employer; (3) failed to plausibly state a claim of a violation of the 14th Amendment Due Process Clause or Section 1983; and (4) cannot sustain a claim for breach of contract. The court will address each of these arguments in turn.

A. FMLA Claims

In his FMLA claims, Hershey assert rights related to the FMLA's self-care provision, which provides eligible employees with "a total of 12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

Preliminarily, the court will *sua sponte* dismiss the FLMA claims against PennDot, a state agency, under the doctrine of state sovereign immunity, which bars suits against states unless the state consents to suit or Congress has validly abrogated such immunity. To date, the General Assembly of the Commonwealth has not waived sovereign immunity for FMLA claims,[6] and the United States Supreme Court has found that Congress did not validly abrogate states' sovereign immunity from suits for money damages in enacting the FMLA's self-care provision. *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012); *see*

---

[6] "[W]aiver of Eleventh Amendment immunity is found only where the state 'voluntarily invokes' federal jurisdiction or where the state 'makes a clear declaration that it intends to submit itself' to federal jurisdiction." *Chittister v. Dep't of Cmty. & Econ. Dev.,* 226 F.3d 223, 227 (3d Cir. 2000) (quoting *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)). The Pennsylvania Constitution states that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. Art. 1 § 11. Furthermore, "it is hereby declared to be the intent of the General Assembly that the Commonwealth ... shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity" 1 Pa.C.S.A. § 2310. Thus, only the General Assembly has the authority to waive Pennsylvania's sovereign immunity.

*Seeney v. Pennsylvania, Dep't of Corr., SCI-Graterford*, 31 F. Supp. 3d 677, 686 (E.D. Pa. 2014) ("[T]he Commonwealth did not waive its sovereign immunity to suits for money damages under the self-care provision of the FMLA.*"); Wampler v. Pennsylvania, Dep't of Lab. & Indus., W.C.A.B.*, 508 F. Supp. 2d 416, 422 (M.D. Pa. 2007) (same). As a result, PennDot is immune from suit under the FMLA self-care provision, and the FMLA claims against it at Counts 1 and 2 will be dismissed.

Hershey's FMLA interference claims against the individual defendants will also be dismissed. To establish an FMLA interference claim, the plaintiff must allege that: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of her intention to take FMLA leave; and, (5) the plaintiff was denied benefits to which he was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014). "Put more succinctly, [to] state a claim for interference, [the plaintiff] only needs to show that he was entitled to benefits under the FMLA and that he was denied them.'" *Callison v. City of Phila.*, 430 F.3d 117, 119-20 (3d Cir. 2005). Although the employee is not required to show discriminatory intent, *id.* at 120, "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156 (3d Cir.

2017). Here, the complaint fails to plausibly allege that Hershey was denied FMLA benefits. To the contrary, the complaint states that Hershey requested and received nearly two months of FMLA self-care leave and that he only returned to work after being medically cleared by his doctor. Accordingly, the complaint fails to plead the necessary elements of an interference claim and, therefore, Count 2 of the complaint will be dismissed with prejudice.

Turning to retaliation, to establish an FMLA retaliation claim, the complaint must contain enough facts to plausibly suggest that the plaintiff: (1) took FMLA leave; (2) suffered an adverse employment action; and (3) that the adverse action was causally related to his leave. *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 158-59 (3d Cir. 2015). "To demonstrate a causal connection, a plaintiff must generally establish either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism, coupled with timing to establish a causal link." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (internal quotations omitted); *see also Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143, 146-47 (3d Cir. 2004).

Hershey alleges that, in January 2020, several of his supervisors began to harass him because he had considered taking FMLA leave to care for his son; that on June 8, 2020, he began FMLA leave for his own medical issues; that also on

June 8, 2020, Defendant Parks, Defendant Strait, and Saylor colluded together to lodge a false sexual harassment accusation against him to have him fired for allegedly violating his "last chance" agreement; and that on July 31, 2020, his first day back at work, he was immediately terminated by Defendant Rishel following a sham hearing. Taking these allegations as true and viewing them in the light most favorable to the non-moving party, as the court is required to do, Hershey has alleged both a pattern of antagonism as well as an unusually suggestive temporal proximity between his FMLA leave and termination sufficient to demonstrate a causal connection. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (finding close temporal proximity qualifies as unusually suggestive); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (finding termination within seven days of the plaintiff invoking her FMLA leave rights to be "sufficient at the prima facie stage"); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding two days unduly suggestive of causation). As such, the complaint sufficiently asserts a prima facie claim of FMLA retaliation.

Thus, having found a properly asserted claim of FMLA retaliation, the court turns to which, if any, individual defendants the claim may proceed against. Hershey alleges that each defendant can be held individually liable because they all exercised supervisory authority over him and either directly participated in the plan

11

to terminate his employment or acquiesced in it. In response, Defendants argue that Hershey has failed to plead facts to establish that any of the individual defendants exercised sufficient control over his employment or participated in the alleged retaliation. (*See* Doc. 51 pp. 13-15.) Upon review of this issue, the court finds that Hershey has only established a prima facie claim against Defendants Strait, Parks and Rishel.

The FMLA prohibits employers from discriminating against employees for asserting rights under the Act. *See* 29 U.S.C. § 2615(a)(1). As pertinent here, the FMLA defines an "employer" as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 416 (3d Cir. 2012) (analyzing 29 U.S.C. § 2611(4)(A)(i)-(iv)); *see also* 29 C.F.R. § 825.104 (defining "Covered employer"). Critically, however, FMLA liability against individuals who are not otherwise an "employer" only exists when the specific individual defendant is alleged to have exercised "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation" while acting in the employer's interest. *Id.* To determine whether an individual supervisor has the requisite control over an employee for purposes of FMLA liability, courts must look to the "economic reality" of the employment situation—"examining whether the individual supervisor carried out the functions of an employer with respect to

the employee." *See Hayberger*, 667 F.3d at 417-418 (collecting cases). Relevant factors to be considered when ascertaining the economic reality include whether the individual defendant: "(1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 418 (internal quotation and alteration omitted). This assessment "depends on the totality of the circumstances rather than 'technical concepts of the employment relationship" and "no one of the four factors standing alone is dispositive." *Id.* (internal quotation and alteration omitted).

Despite broadly asserting that each individual defendant had supervisory or operational control at PennDot (*see* Doc. 46 ¶¶ 3-10), the complaint fails to plausibly show that Defendants Yassmin Gramian, Thomas Prestash, David Krammerer, Mark Yeckley, and Melissa Matchock[7] exercised any control over Hershey's employment or were responsible in whole or in part for the alleged retaliation. As such, the FMLA retaliation claim against these individuals will be dismissed without prejudice. However, for purposes of the instant motion to dismiss, the court finds that the complaint alleges sufficient facts to establish that

---

[7] While the complaint alleges that Defendant Matchock failed to investigate Hershey's reports of harassment, it does not assert or even suggest that Defendant Matchock was in any way personally involved in the alleged scheme to terminate Hershey's employment. In addition, the court cannot consider Defendant Matchock's emails, attached as an exhibit to the brief in opposition to the motion to dismiss (*see* Doc. 56-1), as those emails and their content were not referenced in or attached to the complaint.

Defendants Strait, Parks, and Rishel had the requisite supervisory authority over Hershey and that they each played a role in the alleged plan to terminate his employment allegedly in retaliation for his invocation of FMLA rights. The complaint avers that the three individuals were his supervisors with control over his employment and compensation, and that they acted in concert to deliberately harass Hershey and ultimately terminate his employment following a sham hearing. Accordingly, the FMLA retaliation claim at Count 1 will proceed as to these three defendants.

### B. Pennsylvania Wage Payment and Collection Law Claim

In Count 3 of the complaint, Hershey alleges that when he began working for PennDot, "it was mutually agreed upon that he was entitled to receive accumulated paid time off ("PTO"), sick and/or vacation leave," but that upon his termination, PennDot denied him monetary compensation for his accrued PTO in violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"). (Doc. 46, ¶¶ 9, 99) Defendants argue that this claim should be dismissed because Hershey's employment was not governed by the WPCL. The court agrees.

The WPCL provides a vehicle through which an employee may collect wages owed to him or her from a delinquent employer. *See* 43 Pa.C.S. § 260.1. The WPCL defines an employer as "every person, firm, partnership, association, corporation, or receiver ... employing any person in this Commonwealth." 43

Pa.C.S. § 260.2a. The WPCL, however, does not apply to public employers, such as PennDot. *See, e.g.*, *Stump v. Richland Twp.*, 278 F. App'x 205, 207 (3d Cir. 2008) (affirming district court's finding that the WPCL does not apply to public employers); *Cotner v. Yoxheimer*, No. 1:07-cv-1566, 2008 WL 2680872, at *6 (M.D. Pa. July 2, 2008) (citing *Gallaher v. Goldsmith*, 213 F. Supp. 2d 496 (E.D. Pa. 2002)). Accordingly, the court will dismiss Count 3 of the complaint with prejudice.

### C. 14th Amendment Due Process and Section 1983 Claim

Defendants also move to dismiss Count 4 of the complaint, which asserts a procedural due process violation under 42 U.S.C. § 1983 against PennDot and each of the individual defendants. Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police*

*Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Hershey's procedural due process claim against PennDot pursuant to 42 U.S.C. § 1983 will be dismissed, as PennDot is not a "person" subject to suit under 42 U.S.C. § 1983. *See Hammonds v. Templeton*, 2015 WL 106618, at *3 (W.D. Pa. Jan. 7, 2015), *aff'd sub nom* ("Neither the Commonwealth nor PennDOT is a 'person' for purposes of § 1983, and therefore neither is amendable to suit under the civil rights statute."); *Petsinger v. Pa. Dep't of Transp.*, 211 F. Supp. 2d 610, 613 (E.D. Pa. 2002); *Fitzpatrick v. Pennsylvania Dep't of Transp.*, 40 F. Supp. 2d 631, 635 n.4 (E.D. Pa. 1999); *see also O'Hara v. Ind. Univ. of Pa.*, 171 F.Supp.2d 490, 495 (W.D. Pa. 2001) ("The Commonwealth of Pennsylvania has not waived its immunity in § 1983 civil rights cases and Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983."). Accordingly, the court will dismiss Plaintiff's § 1983 claim against Defendant PennDot at Count 3 with prejudice.

Hershey's due process claims against the individual defendants will also be dismissed as Hershey has not plead facts sufficient to support a claim for a violation of his procedural due process rights. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due

process of law." *Fanti v. Weinstock,* 629 F. App'x 325, 330 (3d Cir. 2015) (quoting *Schmidt v. Creedon,* 639 F.3d 587, 595 (3d Cir.2011)). Defendants concede that Hershey had a protected property interest in his employment with PennDot but argue that PennDot met its due process obligations to him by providing an adequate post-deprivations grievance and arbitration procedure. (Doc. 51. Pp. 12-14.) Hershey, in turn, argues that he was deprived of his employment without adequate notice or representation, and further, that the individual defendants interfered with his ability to pursue a post-termination grievance.[8] (Doc. 46, ¶¶ 105-12; Doc. 56, pp. 13-18.)  The court find's Hershey's arguments unavailing.

Under Third Circuit precedent, a public employee may not raise a procedural due process claim against his employer when grievance and arbitration procedures are in place, because the requirements of due process are satisfied, "even if the hearing conducted by the Employer ... [was] inherently biased." *Dykes v. Southeastern Pa. Transp. Auth.,* 68 F.3d 1564, 1571 (3d Cir.1995) (quoting *Jackson v. Temple Univ.,* 721 F.2d 931, 933 (3d Cir.1983)). In the instant case, the collective bargaining agreement provided Hershey with a five-step review of grievances and an arbitration procedure. (*See* Doc. 51-1, Arts. 28, 37, 38.) Hershey complains that the individual defendants impeded his ability to pursue a grievance,

---

[8] Many of the arguments set forth in Hershey's brief rely on allegations that were not set forth in the complaint and therefore cannot be considered by the court in deciding whether the complaint adequately set forth a claim.

yet he sets forth no facts in the complaint to support this allegation. Certainly Hershey could have filed a grievance regarding his termination, and the court finds no basis to conclude that the procedure provided by PennDot would fail to satisfy the due process clause. Furthermore, Hershey's failure to pursue the procedures available to him belies his claim that the defendant deprived him of his right to procedural due process. *See Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."). For these reasons, Hershey cannot state a claim for violation of his due process rights, and the court will dismiss Count 4 with prejudice.[9]

## IV. **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss will be granted in part and denied in part as follows: Counts 2, 3, 4, and 5 will be dismissed with prejudice, and Count 1 will be dismissed with prejudice as asserted against PennDot and without prejudice as asserted against Defendants Prestash, Krammerer, Yeckley, and Matchock. Count 1 may proceed against Defendants Strait, Parks, and Rishel.

---

[9] The court will not address Defendants' arguments related to Plaintiff's breach of contract claim, as Plaintiff concedes in his brief that his common law breach of contract action is not viable. (*See* Doc. 56, pp. 18-19.) Accordingly, the claim need not be addressed, and Count 5 will also be dismissed with prejudice.

18

An appropriate order shall follow.

*s/Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: September 29, 2023